**HAROCO, INC., et al., Plaintiffs,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, et al., Defendants.**

**No. 83 C 1618.**

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1993.

Ronald L. Futterman, Aram A. Hartunian, Robert C. Howard, James Gerard Bradtke, Phyllis L. Crocker, Robert Mandel Weissbourd, Steven P. Schneck, Futterman & Howard, Chtd., Chicago, IL, for plaintiffs.

Don H. Reuben, Winston & Strawn, Michael White Coffield, Kevin Michael Flynn, Alton B. Harris, Coffield, Ungaretti and Harris, Katherine E. Rakowsky, David E. Schoenfeld, Grippo & Elden, James John Stamos, Stamos & Truco, Chicago, IL, for defendants.

MEMORANDUM AND ORDER

MORAN, Chief Judge.

This case has generated more than its share of legal opinions. The focus, until recently, has been upon plaintiffs' RICO claims, with a recognition as far back as June 2, 1987, that federal jurisdiction depended on the RICO claims. *See* Memorandum and Order of June 2, 1987, 662 F.Supp. 590, 595. We granted summary judgment for defendant once, vacated it and, after considerable additional discovery, granted summary judg-

ment to defendant again. The ground was lack of any evidence of fraud, the basis of the RICO claims. The pendent state claims were thereafter dismissed without prejudice.

The parties were not happy with the state law claims dismissal. No one wanted to start over somewhere else, and we reconsidered and vacated those dismissals and granted the parties leave to file whatever supplemental argument they wished. They have done so, and we now grant summary judgment to defendant on the state law claims.

The claim based on the Illinois Consumer Fraud and Deceptive Business Practices Act, count V, suffers from the same infirmities as the RICO claims, and plaintiffs concentrate their efforts on salvaging the contract claim, count IV. They contend that the bargain was that their interest rate was to be based on the rate charged to the bank's "largest and most creditworthy commercial borrowers for 90–day unsecured commercial loans," not on some estimate of a future rate. But plaintiffs attempt to read too much into the word "estimate." The word comes from this court's Memorandum and Order of April 20, 1992, 793 F.Supp. 783, referring to the analyses in *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co. of Chicago*, 834 F.2d 677, 682 (7th Cir.1987). We there made clear, however, that the prime rate forecast was an estimate only in a limited sense—it was the rate ANB announced as the rate it expected "to charge our best customers, by and large, for the following period and until we announce a subsequent change."

Plaintiffs are correct in contending that their burden to sustain a contract claim is different from that necessary to sustain a RICO claim. They do not need to prove an intentional fraud. They need only prove that ANB was in breach of a contract obligation because, for whatever reason, inadvertent or otherwise, it charged plaintiffs at a rate tied to a standard that was higher than the rate charged the class supposedly defining the standard. Clearly, however, plaintiffs expected to pay a rate tied to the announced rate so long as the announced rate was in fact the rate prevailing. And just as clearly,

ANB expected the announced rate to be the prevailing rate.

If LIBOR funds had become the standard vehicle for financing the largest and most creditworthy, then plaintiffs' contention would have more force, even though LIBOR loans had aspects differing somewhat from more conventional financing. But an exhaustive analysis of loans demonstrated that LIBOR financing was an occasional option at best and that for the overwhelming majority of loans the announced rate was the benchmark rate. And that is all that plaintiffs can require.